# United States District Court
# District of Massachusetts

SUNITA ESWARAPPA,
    Plaintiff,

    v.                           CIVIL ACTION NO. 06-11169-RBC

SHED INC./KID'S CLUB,
    Defendant.

## MEMORANDUM AND ORDER
## ON MOTION OF DEFENDANT
## SHED INC./KID'S CLUB TO ENFORCE
## SETTLEMENT  AGREEMENT    (#110)

COLLINGS, U.S.M.J.

### I. Introduction

In her complaint, plaintiff Sunita Eswarappa ("Eswarappa") alleges claims of discrimination and retaliation based on age and race against defendant SHED Inc./Kid's Club  ("SHED").  Following more than three years of litigation, in mid-November, 2009, the parties requested that the case be referred to the district court's ADR program for mediation to be held as soon as possible, but in no event later than December 31, 2009. (*See* Electronic Court Note dated

11/12/2009)  The case was assigned to Magistrate Judge Marianne B. Bowler who set the mediation for December 14, 2009 and ordered that "[a]ll parties and trial counsel are REQUIRED to attend and must have full binding settlement authority." (#107, emphasis in original)  The mediation was rescheduled to December 17, 2009 and ultimately held on that date.   At the conclusion of the mediation, Magistrate Judge Bowler reported the case as settled (#108), and on December 22, 2009, the Court entered the standard Order Re: Settlement (#109) directing the parties to file the papers necessary to remove the case from the Court's docket on or before the close of business on February 18, 2010.

On December 23, 2009, Eswarappa's attorney faxed a letter to Magistrate Judge Bowler, cc'd to SHED's attorney, stating that the plaintiff was revoking her acceptance of the settlement. (#110, Exh. 4)  On December 31, 2009, SHED filed a motion to enforce the settlement agreement together with a supporting memorandum and exhibits. (#110)  On January 13, 2010, Eswarappa filed a memorandum in opposition to the defendant's motion (#112) as well as an affidavit of the plaintiff (#113) and an affidavit of plaintiff's counsel (#114). SHED was granted leave to submit a reply which was filed on January 19, 2010. (#116)  On January 25, 2010, a hearing was held on the motion to enforce and, at this juncture, the motion stands ready for decision.

## II. *The Background Facts*

The manner in which the December 17, 2009 mediation was conducted is undisputed.  Confidential mediation briefs were submitted in advance of the mediation.   At the outset of the  session, each party presented an initial statement to the other party and Judge Bowler. (#110 at 3 ¶ 12; #112 at 5 ¶ 8)  Thereafter throughout the course of the day Judge Bowler met privately with each party, and relayed numerous settlement demands/offers/counteroffers between the parties. (#110 at 3 ¶¶ 12, 13; #112 at 5 ¶ 10)  According to plaintiff's attorney:

> At various times when Judge Bowler met with [Eswarappa] and her attorney, she related her assessment of [Eswarappa's] case and pointed out the uncertainty of jury trials in such cases and the various probable outcomes and provided [Eswarappa] with the opportunity to make a statement, which she exercised.

Affidavit of Nicholas J. DeNitto #114 ¶ 11.

Late in the afternoon, Judge Bowler presented the terms of SHED's final offer[1] to Eswarappa and asked if she accepted the offer. (#114 ¶¶ 16, 17)  Eswarappa responded affirmatively. (#114 ¶ 17) Judge Bowler then invited SHED's

---

[1]

The specific monetary terms of the offer are laid out in the parties' papers, but those papers are under seal.  Suffice it to say that the total amount of the monetary settlement, the structured payment schedule and the manner in which the monies would be disbursed/paid were all the subject of agreement. (#110 at 3; #114 at 3-4)

representative and its attorney to join Eswarappa and her attorney in the courtroom, where, before all the interested parties, Judge Bowler repeated the terms of the offer that had been accepted. (#110 at 4 ¶ 14; #114 ¶ 18) Counsel and the parties agreed that the terms of the settlement as recited by Judge Bowler were acceptable.  According to the plaintiff, "[a]t this juncture <u>the parties concluded the case was settled</u> based on [Eswarappa's] acceptance of the money offer and method of payment." (#112 at 8 ¶ 21 (emphasis in original); #114 ¶ 19 (emphasis in original))  Having established an agreement between the parties, Judge Bowler reported on December 17th that the case was settled. (#108)

On December 22, 2009, SHED's counsel e-mailed a proposed Settlement Agreement and Release (#112, Exh. A) and a Stipulation of Dismissal (#112, Exh. B) to Eswarappa's attorney. (#112 at 8 ¶ 24)  As noted earlier, the next day the plaintiff's counsel faxed a letter to Judge Bowler wherein Eswarappa notified the court that she "hereby revokes her acceptance of the settlement offer of defendant, Shed Inc./Kid's Club...[made] during the mediation on December 17, 2009." (#112, Exh. C)  In turn, SHED filed its motion to enforce the settlement.

### III. Discussion

4

Eswarappa advances several arguments in opposition to SHED's motion which shall be addressed seriatim.  The plaintiff does not dispute that she, in fact, accepted the terms of SHED's settlement offer on December 17, 2009. Rather, Eswarappa takes the position that she has the legal right to revoke that acceptance.

At the outset, it is beyond cavil "that public policy strongly favors encouraging voluntary settlement of employment discrimination claims." *E.E.O.C. v. Astra U.S.A., Inc.*, 94 F.3d 738, 744 (1 Cir., 1996) (citing *Carson v. American Brands, Inc.*, 450 U.S. 79, 88 n. 14 (1981) ("In enacting Title VII, Congress expressed a strong preference for encouraging voluntary settlement of employment discrimination claims.")) When Eswarappa purportedly revoked the settlement agreement, it had yet to be reduced to writing; at least the defendant plainly anticipated the production of a written document as evidenced by SHED's attorney e-mailing a proposed draft of the settlement and a release to plaintiff's counsel.  In any event, an oral settlement agreement "is permissible." *F.A.C., Inc. v. Cooperativa de Seguros de Vida de Puerto Rico*, 449 F.3d 185, 187 (1 Cir.) (citing *Quint v. A.E. Staley Mfg. Co.*, 246 F.3d 11, 15 (1 Cir., 2001) ("Quint's argument, that when the parties to an agreement

contemplate a written document will memorialize a contract, there can be no agreement until the document is executed, is a radical and doomed departure from the principles of contract law."), *cert. denied*, 535 U.S. 1023 (2002)), *cert. denied*, 549 U.S. 1089 (2006).

The First Circuit has explained that:

> A party to a settlement agreement may seek to enforce the agreement's terms when the other party reneges....If, however, the settlement collapses before the original suit is dismissed, the party who seeks to keep the settlement intact may file a motion for enforcement. *See United States v. Hardage,* 982 F.2d 1491, 1496 (10th Cir.1993) ("A trial court has the power to summarily enforce a settlement agreement entered into by the litigants while the litigation is pending before it.") (citations omitted); *Mathewson Corp. v. Allied Marine Indus., Inc.,* 827 F.2d 850, 852-53 (1st Cir.1987) (similar). In a federal court, such a motion - at least when the underlying cause of action is federal in nature - is determined in accordance with federal law. *See Michaud v. Michaud,* 932 F.2d 77, 80 n. 3 (1st Cir.1991); *Fennell v. TLB Kent Co.,* 865 F.2d 498, 501 (2d Cir.1989); *Mid-South Towing Co. v. Har-Win, Inc.,* 733 F.2d 386, 389 (5th Cir.1984); *Gamewell Mfg., Inc. v. HVAC Supply, Inc.,* 715 F.2d 112, 115-16 (4th Cir.1983).

*Malave v. Carney Hosp*., 170 F.3d 217, 220 (1 Cir., 1999); *see also Kinan v. Cohen*, 268 F.3d 27, 32 (1 Cir., 2001); *Quint v. A.E. Staley Mfg. Co.*, 246 F.3d 11, 14 (1 Cir., 2001), *cert. denied*, 535 U.S. 1023 (2002); *Negron Gaztambide v. Hernandez Torres*, 145 F.3d 410, 415 (1 Cir., 1998), *cert. denied*, 525 U.S.

1149 (1999).

Thus, because this case has not been dismissed, the Court has the power to enforce the settlement agreement. *Quint*, 246 F.3d at 14.

In her opposition Eswarappa argues in various ways, i.e., the "parties did not agree beforehand to be bound by the mediation conference decision[2]" (#113 ¶ 4), "I never agreed or waived my right to revoke the mediation outcome" (#113 ¶ 6) and "I was not informed that once I agreed to accept SHED's offer, I could not change my mind" (#113 ¶ 7), that she did not believe the settlement agreement to be final.  The plaintiff does not assert that she negotiated for the right to repudiate as part of the settlement agreement, nor has she cited any case law to support her apparent assumption that a right to revoke is somehow an integral part of every settlement agreement.   Also, properly, Eswarappa does not contend that, as a matter of law, she should have been afforded "a period of at least 7 days following the execution of such an agreement [waiving a right or claim under the ADEA], [within which she] may revoke the agreement." Title 29 U.S.C. § 626(f)(1)(G).  Since an action had

---

[2]

This contention is somewhat disingenuous given the Court's Order when scheduling the mediation that "[a]ll parties and trial counsel are REQUIRED to attend and **must have full binding settlement authority**." (#107, additional emphasis added)

been filed in court alleging age discrimination under 29 U.S.C. § 623, only "subparagraphs (A) through (E) of paragraph (1) [of 29 U.S.C. § 626]" are applicable. *See* Title 29 U.S.C. § 626(f)(2)(A); *see also Powell v. Omnicom,* 497 F.3d 124, 131-2 (2 Cir., 2007); *Gomez v. AlliedSignal, Inc.*, 172 F.3d 62 (Table, Text in Westlaw), 1999 WL 89040, *2 (10 Cir., Feb. 23, 1999)(unpublished disposition).[3]

That the defendant included such a seven-day right to revoke in its proposed written settlement agreement is not determinative; the plaintiff cannot bootstrap that provision into the oral settlement agreement. Eswarappa never signed SHED's draft agreement so the provision constitutes

no more than a proposed additional term that was rejected. Defense counsel's protestations about the purported intent of that clause notwithstanding, it would be a different story had the plaintiff executed defendant's proposed settlement agreement.

---

[3]

The Sixth Circuit decision in *Neely v. Good Samaritan Hospital*, 345 Fed. Appx. 39, 2009 WL 2341513 (6 Cir., Jul. 31, 2009) (unpublished) which found that the statutory right to revoke had to be given is factually distinct since no court action alleging a violation of the ADEA had been filed in that case.

The bottom line is, as the First Circuit has explained, "[t]he [parties']
subjective belief that the agreement was not 'final' does not bar enforcement in
the face of their assent--in writing--to the memorandum's unambiguous terms.
*See Bandera v. City of Quincy*, 344 F.3d 47, 52 (1st Cir. 2003) (applying
Massachusetts law) ('Bandera's asserted subjective beliefs regarding the
settlement likely do not bar enforcement (absent coercion or a valid side
agreement)....')." *Fidelity and Guar. Ins. Co. v. Star Equipment Corp*., 541 F.3d
1, 6 (1 Cir., 2008).

That having been said, the First Circuit has declared that

> [a]s a general rule, a trial court may not summarily
> enforce a purported settlement agreement if there is a
> genuinely disputed question of material fact regarding
> the existence or terms of that agreement. In such

circumstances, the cases consentingly hold that the
court instead must take evidence to resolve the
contested issues of fact.

*Malave*, 170 F.3d at 220 (citations omitted); *see also Fidelity*, 541 F.3d at 5.

Here, it is uncontested that the parties agreed to the total amount of the
settlement, that an initial payment in a sum certain would be made followed by
three annual installments of a lesser sum certain, and that each payment would
consist of two checks, one payable to Eswarappa in the amount of two-thirds of
the payment and another payable to Eswarappa's attorney in the amount of
one-third of the payment. (#110 at 3-4 ¶¶ 13-14; #112 at 7 ¶ 18)  In her brief,
the plaintiff asserts that during the mediation "there was no discussion and/or
conditions attached to SHED's settlement offer before [Eswarappa's] acceptance
thereof," and then argues that there must be mutual assent to all material terms
before a contract may be enforced. (#112 at 10)       It is true that there must
be mutual assent to all material terms of a contract to render it enforceable.
However, plaintiff has failed to identify clearly either any material terms that
were not, but should have been, the subject of agreement, or any ambiguity in
the terms the parties agree are, in fact, part of the settlement agreement.  One
possibility is Eswarappa's contention that she   "did not agree to sign a

settlement agreement and release all of my present and future claims against SHED." (#114 at 6 ¶ 28; #113 ¶ 22)   Surely the plaintiff did not think that SHED would be making gratuitous payments to her.   Common sense dictates that there be a *quid pro quo* in a settlement agreement, that SHED would pay Eswarappa money in return for which she would dismiss her claims in her complaint.[4]   The plaintiff's assertion is simply inadequate to raise an genuine disputed issue of material fact about the terms of the settlement agreement as would mandate the need to hold an evidentiary hearing.

Another possibility is the following argument made by Eswarappa:

> However, what SHED neglects to mention is because its offer of settlement was contingent on installment or structured payments over a three year period, SHED must provide an agreement in writing and signed by a duly authorized representative of SHED to sufficiently satisfy the Statute of Frauds, otherwise [Eswarappa] would be placed in an untenable position and be unable to legally enforce the payments by SHED that are not paid within one year....In its offer to [Eswarappa] on 12/17/09, and accepted by her, SHED failed to include any mention of memorializing in

---

[4]   The plaintiff has not pointed to any new or different material terms in the draft settlement agreement and release sent by SHED's attorney except the term with respect to future claims. (#112, Exh. A ¶ 6)   In any event, these were proposed documents.   SHED's attorney's e-mails plainly invited Eswarappa's attorney's comments, i.e., "[p]lease let me know what you think." (#112, Exh. A, Exh. B)   Further, the agreement sought to be enforced is the oral agreement reached on December 17, 2009.   The First Circuit has "rejected the argument that 'there can be no agreement until a document is executed.'" *Kinan*, 268 F.3d at 33 (quoting *Quint*, 246 F.3d at 15).

> writing, the structured payment schedule of settlement
> funds by SHED...Because such an omission by SHED
> represents a 'genuine disputed question of material
> fact...as to the existence or terms of settlement
> agreement, the court should hold a hearing and resolve
> the contested factual issues.'

#117 at 7-8 (citation omitted).

The Court does not read this argument as claiming that the oral agreement reached at the mediation runs afoul of the statute of frauds. If, however, that is the plaintiff's contention, she is incorrect.

Eswarappa quotes the Massachusetts statute of frauds, Mass. Gen. L. c. 259 § 1, but that statute is inapplicable.[5]  As noted earlier, because the underlying claims in this case are founded on federal discrimination laws, it is federal common law that is determinative. *See Kinan*, 268 F.3d at 32; *Quint*, 246 F.3d at 14 ("Where, as here, the underlying action is brought pursuant to a federal statute, whether there is an enforceable settlement is a question of federal, rather than state, law."); *Malave*, 170 F.3d at 220.  The plaintiff has

---

[5]

Even if Massachusetts law applied, in circumstances such as this where an oral settlement was reached with structured payments that could not be performed within one year, under a theory of judicial estoppel the statute of frauds would not bar enforcement of the oral settlement agreement. *See Basis Technology Corp. v. Amazon.com, Inc.*, 71 Mass. App. Ct. 29, 42-4, 878 N.E.2d 952, 963-4 (2008), *rev. denied*, 450 Mass. 1109 (2008)(Table); *Correia v. DeSimone*, 34 Mass. App. Ct. 601, 603-4, 614 N.E.2d 1014, 1015-16 (1993).

cited no federal statute of frauds that would apply to the facts at hand, nor has the Court found one. Moreover, a similar oral agreement has been found to be enforceable under federal common law in the face of a statute of frauds challenge. *See Wang Laboratories, Inc. v. Applied Computer Sciences, Inc.*, 741 F. Supp. 992, 1000 (D. Mass, 1990), *rev'd. on other grounds*, 958 F.2d 355 (Fed. Cir., 1992).[6]

What Eswarappa seems to be arguing is that because the parties did not negotiate and agree to the fact that their oral settlement agreement would be reduced to writing so as to protect the plaintiff's ability to enforce that agreement, a disputed issue of material fact about the terms of the oral agreement remains extant and the Court must hold an evidentiary hearing. The plaintiff is attempting to make an issue out of whole cloth. She has cited no case law to support the proposition that resolution of whether or not to reduce an oral agreement to writing constitutes a material term of such an agreement.

---

[6]

When faced with a statute of frauds issue in this context, in general courts simply conclude that the federal and state law do not materially differ without any further elucidation. *See*, e.g., *Powell*, 497 F.2d at 129 n. 1. Perhaps the dearth of case law on this point underscores Judge Young's observation that "it would be blinking reality to hold that federal common law contains a statute of frauds in cases such as the instant one where a party changes its position with respect to whether it has settled....[T]he issue in determining whether the parties have settled is whether the parties have notified the court that their case has settled, not whether there is a settlement agreement which passes muster under the statute of frauds." *Wang Laboratories*, 741 F. Supp. at 999 n. 8.

Indeed, courts have ordered parties to execute settlement agreements and general releases that accurately reflect the terms of the parties' oral agreement when granting motions to enforce settlements. *See*, e.g., *Collins v. Educational Therapy Center*, 184 F.3d 617, 619, 620 (7 Cir., 1999).

To summarize, the Court finds no material facts are in dispute with respect to the terms of the December 17th oral settlement agreement, so no evidentiary hearing need be held.

Lastly, Eswarappa claims that she has the right to revoke the settlement agreement because she was (1) "intimidated by the mediation process and Judge Bowler;" (2) that "because of Judge Bowler's comments regarding her assessment of potential trial outcomes, the uncertainty of jury verdicts, comments about juries, and not being given a second opportunity to contact [her] husband to discuss [her] final decision with him[7], [she] felt coerced to accept SHED's...offer;" (3) that she "was confused and felt coerced by the situation and by Judge Bowler to accept SHED's offer of [a sum certain], when

---

[7] According to the plaintiff, during the morning mediation session Judge Bowler had invited Eswarappa to use the telephone in the judge's lobby to call her husband to discuss SHED's offer, but she was unable to reach him. (#112 at 6 ¶ 13)  Later in the afternoon the plaintiff claims that she asked Judge Bowler if she could again try to contact her husband to discuss the final offer before she accepted it, but Judge Bowler did not respond. (#112 at 7 ¶ 19)

[she] did not want to agree to it;" and (4) that she "felt coerced by [her]

attorney, who encouraged [her] to accept an offer that was less than [her]

settlement demand on 12/17/09." (#113 ¶¶ 10, 11, 14, 19)  In essence, the

plaintiff is claiming the settlement was not knowing and voluntary and,

consequently, is not valid.

The First Circuit has had occasion to determine that:

> While there is no case in this circuit dealing
> explicitly with an employee's release of Title VII rights
> in similar circumstances, our precedent leaves little
> room for doubt that such a release, like a release of
> other federal statutorily-created rights, must be
> knowing and voluntary, as evidenced by the totality of
> the circumstances, and that, if it is, the terms of the
> release will ordinarily be given their legal effect.
> *Rivera-Flores v. Bristol-Myers Squibb Caribbean,* 112
> F.3d 9, 11 (1st Cir.1997).

*Melanson v. Browning-Ferris Industries, Inc.,* 281 F.3d 272, 274 (1 Cir.,
2002)(footnote omitted).

The totality of the circumstances approach adopted by the First Circuit is guided

by consideration of six "helpful, but not exclusive" factors, to wit:

> (1) plaintiff's education and business sophistication;
> (2) the respective roles of employer and employee in
> determining the provisions of the waiver; (3) the
> clarity of the agreement; (4) the time plaintiff had to

> study the agreement; (5) whether plaintiff had
> independent advice, such as that of counsel; and (6)
> the consideration for the waiver.

*Rivera-Flores v. Bristol-Myers Squibb Caribbean,* 112 F.3d 9, 12 and n. 4 (1 Cir., 1997)(citation omitted); *Melanson*, 281 F.3d at 276 and n. 4.

When weighing these factors, the First Circuit has emphasized "that [g]enerally, no single fact or circumstances is entitled to talismanic significance on the question of waiver. It is not necessary that each be satisfied before a release can be enforced. The essential question is whether, in the totality of the circumstances, the individual's waiver of her right can be characterized as 'knowing and voluntary.'" *Melanson*, 281 F.3d at 276 (internal citation and quotation marks omitted)).

Further, since the case at bar also involves the waiver of a claim under the Age Discrimination and Employment Act ("ADEA"), 29 U.S.C. § 621, *et. seq.*, the requirements of the Older Workers Benefit Protection Act ("OWBPA"), 29 U.S.C. § 626(f), must also be met. *Skirchak v. Dynamics Research Corp.*, 508 F.3d 49, 57 (1 Cir., 2007)("Congress has, through the Older Workers Benefit Protection Act, legislatively required that waivers of ADEA rights be knowing and voluntary."); *Melanson*, 281 F.3d at 273, n. 2. In relevant part, OWBPA

provides that "[a]n individual may not waive any right or claim under this Act [ADEA] unless the waiver is knowing and voluntary." Title 29 U.S.C. § 626(f)(1). In circumstances where an age discrimination case has been filed in court, as here, a waiver will not be deemed "knowing and voluntary unless at a minimum (A) subparagraphs (A) through (E) of paragraph (1) have been met[8]; and (B) the individual is given a reasonable period of time within which to consider the settlement agreement." Title 29 U.S.C. § 626(f)(2)(A) and (B).

Reviewing the totality of the circumstances, the mediation in this case was conducted under the auspices of the district court alternative dispute resolution program. Magistrate Judge Marianne B. Bowler, the judicial officer who presided, is an experienced trial judge and mediator. The plaintiff is a woman over the age of fifty who holds a B.A. degree from the University of Mysore in Chitradurga, India, from which she graduated with three majors, economics, political science and sociology, and who holds certificates in Computer Application, APEX, and Early Childhood. (Complaint #4 ¶ 2; #112 at 2)

---

[8]

The plaintiff raises no issue with respect to the requirements of § 626(f)(1)(A)-(E). It seems clear that those prerequisites have been substantially met, albeit the waiver is not in writing. The plaintiff does not contest the terms to which the parties agreed. *See Powell*, 497 F.3d at 131 ("The in-court announcement [of the terms of the settlement agreement] functioned in a manner akin to that of a memorializing writing.")

Eswarappa had worked for SHED since 1997. (#112 at 2)  The plaintiff has been represented by the same attorney for at least the three and a half years since the time she filed her complaint in the state court on May 26, 2006. (#4) Eswarappa attended the mediation session with her attorney.

The terms of the settlement agreement are specific, detailed and clear. Both parties had input into the terms of the agreement.[9]  Both the parties and their attorneys agreed to the settlement terms.  The total monetary amount being paid in consideration of the settlement is significant; no facts have been brought to the Court's attention (apart from Eswarappa's apparent subjective belief that anything less than her own settlement demand was insufficient (#113 ¶ 19)) to suggest that the settlement amount is inadequate or unfair.

In sum, Eswarappa is a well-educated woman who attended the mediation session with her long-time attorney, participated in the give-and-take

---

[9]

Defendant's attorney states in his affidavit that:

> Once the parties reported to Judge Bowler that the terms of the agreement were acceptable, she brought both parties together in her courtroom.  There, she recited the terms of the agreement and asked if the terms were, in fact, acceptable to both parties.  Judge Bowler also informed us that another condition of settlement put forth by Eswarappa was that SHED was to issue two separate checks for each payment....SHED agreed to that payment arrangement in open court.

#110, Attachment 1 ¶ 15.

of the negotiations under the guidance of a magistrate judge to reach the terms of the settlement agreement, and then agreed to those terms in private with Judge Bowler and again in the courtroom with all parties and Judge Bowler in attendance.   That Judge Bowler discussed her assessment of potential trial outcomes and the inability to predict jury verdicts is not indicative of coercion; the trial business is, by its nature, fraught with uncertainty.   The mediator sharing her considered opinion based on her own trial experience aids the layperson in having a realistic view of the pros and cons of settling versus continuing to trial.  Similarly, because her attorney encouraged and advised her that it was in her best interest to accept the settlement offer does not equate to him coercing her.  Lastly, Eswarappa's acceptance of the terms of the settlement cannot be viewed as "involuntary" merely because she did not have the opportunity again to try to reach her husband.[10]   The totality of the circumstances evidence that the plaintiff's oral acceptance of the terms of the settlement agreement was knowing and voluntary.

Finally, to the extent that state contract law principles inform the "knowing and voluntary" analysis, Eswarappa's allegations fail to make out a

---

[10] The defendant notes that numerous breaks, including one at lunch time, were taken throughout the day during which the plaintiff could have attempted to telephone her husband.

prima facie case of duress.  Under Massachusetts law, "[t]o avoid a contract on the basis of duress, a party must show that conduct by the other party caused him to enter into the contract 'under the influence of such fear as precludes him from exercising free will and judgment.'" *Coveney v. President & Trustees of College of Holy Cross*, 388 Mass. 16, 22, 445 N.E.2d 136, 140 (1983)(quoting *Avallone v. Elizabeth Arden Sales Corp.*, 344 Mass. 556, 561, 183 N.E.2d 496 (1962)); *see also Happ v. Corning, Inc.*, 466 F.3d 41, 44 (1 Cir., 2006)(applying Massachusetts law)("[A] party claiming to have entered into a contract under duress has the burden of showing that (1) he has been the victim of some unlawful or wrongful act or threat; (2) the act or threat deprived him of his free or unfettered will; and (3) due to the first two factors, he was compelled to make a disproportionate exchange of values.")(footnote omitted).  Nothing in the facts of this case remotely suggests any conduct by SHED or Judge Bowler that would instill "fear" in the plaintiff, or that Eswarappa was the victim of an unlawful act or threat.

Similarly, if Eswarappa's contentions could be read more specifically as raising an issue of economic duress, the Massachusetts Supreme Judicial Court has explained:

> To show economic duress (1) a party must show that
> he has been the victim of a wrongful or unlawful act or
> threat, and (2) such act or threat must be one which
> deprives the victim of his unfettered will, resulting in
> the threatened party being compelled to make a
> disproportionate exchange of values.
>
> The elements of economic duress have also been
> described as follows: (1) that one side involuntarily
> accepted the terms of another; (2) that circumstances
> permitted no other alternative; and (3) that said
> circumstances were the result of coercive acts of the
> opposite party.  To show duress, a victim must go
> beyond the mere showing of a reluctance to accept
> [and] financial embarrassment and show that acts of
> the other party produced these factors.  Thus, [i]n
> order to substantiate the allegation of economic duress
> or business compulsion ... [t]here must be a showing of
> acts on the part of the defendant which produced [the
> financial embarrassment]. The assertion of duress must
> be proved by evidence that the duress resulted from
> defendant's wrongful and oppressive conduct and not
> by plaintiff's necessities.

*Cabot Corp. v. AVX Corp.*, 448 Mass. 629, 637-638, 863 N.E.2d 503, 511-512 (2007) (internal citations and quotation marks omitted); *see also Happ,* 466 F.3d at 44.

Again, nothing in the plaintiff's papers raises the spectre of wrongful or oppressive conduct by SHED or Judge Bowler during the mediation.

The plaintiff filed her complaint with the MCAD on May 27, 2003.  By

21

December 17, 2009, six and a half years had passed since Eswarappa had been terminated by SHED. (#4 ¶ 4)  With the complaint having been filed in the state court on May 26, 2006, the plaintiff's claims had been in litigation for three and a half years by the time the mediation was held.  This extended period afforded Eswarappa substantial time within which to consider terms upon which she would settle.  Having had the same legal representation throughout the life of this litigation, the plaintiff also had ample time to discuss settlement alternatives with counsel.  According to the parties, the mediation session lasted hours until late afternoon, basically an entire business day.  In light of all of these circumstances, the plaintiff had "a reasonable period of time to consider the settlement agreement." Title 29 U.S.C. § 626(f)(2)[11]; *see also Powell*, 497 F.3d at 132.

### IV. Conclusion

For all the reasons stated it is ORDERED that the Motion of Defendant

---

[11]

"The Equal Employment Opportunity Commission has interpreted this requirement to mean 'reasonable under all the circumstances, including whether the individual is represented by counsel or has the assistance of counsel.' 29 C.F.R. § 1625.22(g)(4)." *Powell*, 497 F.3d at 132.

22

SHED Inc./Kid's Club To Enforce Settlement Agreement (#110) be, and the same hereby is, ALLOWED.   It follows that the case is settled, and Final Judgment shall enter dismissing plaintiff's claims with prejudice as per that settlement.

/s/ Robert B. Collings

ROBERT B. COLLINGS
United States Magistrate Judge

February 18, 2010.

23